# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

RICHARD ROSADO,

         Plaintiff,

  vs.              9:13-CV-1133
                   (GLS/ATB)

ERIC T. SCHNEIDERMAN, *et ano.*,

         Defendants.

---

RICHARD ROSADO, Plaintiff pro se
BRUCE J. BOIVIN, AAG, Attorney for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Gary L. Sharpe, Chief United States District Judge.

In this civil rights complaint, plaintiff alleges that he was denied due process in conjunction with his involuntary commitment to the Central New York Psychiatric Center ("CNYPC") as a sex offender requiring civil management, pursuant to Article 10 of the N.Y. Mental Hygiene Law ("MHL"). (Compl.) (Dkt. No. 1). Plaintiff also claims that the defendants violated a federal court preliminary and permanent injunction in confining him past his mandatory release date. Plaintiff seeks a substantial amount of money damages. (Compl. at CM/ECF pp. 6-7).

Presently before the court is the defendants' motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1)

and (b)(6). (Dkt. No. 6). Plaintiff has responded in opposition to the motion, and defendants have filed a reply. (Dkt. Nos. 14, 15). For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint with prejudice.

## I.  Motion to Dismiss

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents

incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing *inter alia County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of NLRB decisions)). *See also Combier-Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Services, LLC*, No. 3:12-CV-1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties).

## II.   **Background of Relevant Caselaw**

In order to better understand the plaintiff's claims, it is necessary to discuss the background of the specific cases he relies upon for his due process challenge. Effective on April 13, 2007, the New York Sex Offender Management and Treatment Act ("SOMTA"), codified in Article 10 of the MHL, authorizes the "civil management" of certain sex offenders after completion of their prison terms, parole terms, or other periods of state custody. *Mental Hygiene Legal Service v. Cuomo ("MHLS-II")*, 785 F.

Supp. 2d 205, 209 (S.D.N.Y. 2011). This "civil management" is based upon the danger to society that is posed by recidivist sex offenders.[1] *Id.* "Civil management" can include placement and treatment in a secure facility, akin to incarceration as well as other "strict and intensive supervision." SOMTA provides for procedures to be followed when an individual who has been convicted of a sex offense is nearing the end of his sentence of incarceration or other state custody in order to determine whether civil commitment is necessary.

MHLS filed a "pre-enforcement" facial challenge to certain provisions of the SOMTA, only one of which is relevant to this case. *Id.* MHL Section 10.06(k) mandates involuntary civil detention, pending a commitment trial, based upon a finding at a probable cause hearing that the individual may have a mental abnormality, without a finding of current dangerousness. *Id.* In general, the MHL provides that when a convicted sex offender nears release from confinement or parole, a "multidisciplinary staff" provides a "preliminary review" to determine whether the individual should be referred for further evaluation. *MHLS-II*, 785 F. Supp. 2d at 211 (citing MHL § 10.05(d)). If the staff determines that additional evaluation is necessary, a case review team ("CRT"), consisting of three individuals, at least two of whom are mental health

---

[1] In *Mental Health Legal Services v. Spitzer* ("*MHLS-I*"), No. 07 Civ. 2935, 2007 WL 4115936 (S.D.N.Y. Nov. 16, 2007), the court elaborated upon the purposes for SOMTA, stating that the New York Legislature found that recidivistic sex offenders pose a danger to society that should be addressed through comprehensive programs of treatment and management, and that some sex offenders have mental abnormalities that predispose them to engage in repeated sex offenses. 2007 WL 4115936 at *1 (citing MHL §§ 10.01(a), 10.01(b)). Treatment of these offenders begins during their incarceration on the criminal charges, but the legislature found that the treatment should continue when that incarceration comes to an end, and that in "extreme cases," confinement will need to be extended by civil process in order to provide treatment while protecting the public from recidivist conduct. *Id.*

professionals, must determine whether that person (the "respondent") requires additional civil management. *Id.* (citing MHL § 10.06(a)). The respondent is afforded notice of the referral. *Id.* (citing MHL § 10.05(e)).

The CRT determines whether the respondent suffers from a mental abnormality and is either a "dangerous sex offender requiring confinement," or "a sex offender requiring strict and intensive supervision." *Id.* at 212 (citing MHL §§ 10.03(1), 10.03(q), 10.03(e), 10.03(r)). If it appears that the individual will be released prior to the time the CRT makes its determination, the Attorney General ("AG") is authorized to file a "securing petition," preventing the individual's release from custody while the review is ongoing. *Id.* (citing MHL § 10.06(f)).

If the CRT determines that the individual requires additional "civil management," the AG files a "sex offender civil management petition" in New York State Court. The court must conduct a hearing to determine whether there is probable cause to believe that the individual requires civil management. *Id.* (citing §§ 10.06(a), (g), and (k)). The hearing must commence withing 72 hours of the anticipated release date unless the individual consents or the AG shows good cause for the delay. MHL §§ 10.06(g), (h). Upon the court's finding of probable cause, SOMTA provides that the individual must be committed to a secure treatment facility pending resolution of a full commitment trial. MHL § 10.06(k). The statute provides that the trial must begin within 60 days of the probable cause hearing. MHL § 10.07(a).

In *MHLS-1*, the court granted a preliminary injunction, prohibiting the enforcement of MHL § 10.06(k), without an individualized finding that the individual

5

was "dangerous," and that no condition or combination of conditions of supervision could allow the respondent to be at liberty pending the final adjudication. *See* 2007 WL 4115936, at *15. The court in *MHLS-II* found that section 10.06(k) was facially unconstitutional and granted a permanent injunction, with the same conditions. The court must note that neither[2] court invalidated the section altogether as plaintiff seems to argue. Rather that prohibiting use of the section altogether, the court specifically enjoined enforcement of section 10.06(k) "***absent a specific, individualized finding of probable cause to believe that a person is sufficiently dangerous to require confinement, and that lesser conditions of supervision will not suffice to protect the public during the pendency of the proceedings.***"[3] *Id.*

The court notes that although the Second Circuit affirmed the preliminary injunction, it later reversed the court's order granting a permanent injunction and remanded the case to the district court to determine whether MHLS had standing to pursue the action on behalf of its clients, who were respondents in the MHL proceedings.[4] *MHLS v. Schneiderman*, 472 F. App'x 45 (2d Cir. 2012). On remand, the

---

[2] The judge who issued the preliminary injunction in *MHLS-I* was Judge Gerard E. Lynch. Judge Lynch was subsequently appointed to the Second Circuit Court of Appeals, and the case was assigned to Judge Deborah A. Batts, who issued the permanent injunction in *MHLS-II* in 2011.

[3] In making this determination, the court likened the analysis under the MHL to section of the Bail Reform Act which provides for pretrial detention of a criminal defendant upon a finding of probable cause to believe that the defendant has committed the crime, and that the individual poses a danger to the community that no conditions or combination of conditions of release will prevent. *See* 785 F. Supp. 2d at 225 (citing *United States v. Salerno*, 481 U.S. 739, 750 (1987)). Probable cause alone will not suffice. *Id.*

[4] The standing issue arose from the Second Circuit's decision in *Disability Advocates, Inc. v. New York Coalition for Quality Assisted Living, Inc.*, 675 F.3d 149 (2d Cir. 2012). The issue was whether MHLS could establish any of the "indicia of membership" required for a membership

District Court found that MHLS did not have standing to pursue the respondents' claims and dismissed the action. *MHLS v. Cuomo* ("*MHLS-III*"), No. 07 Civ. 2935 (DAB), 2014 WL 1345891 (S.D.N.Y. Mar. 31, 2014).

## III.  Facts and Contentions

Plaintiff alleges that after being found guilty on February 13, 1998, he was sentenced to ten "determinate years" in prison.  He states that he maximum release date was February 14, 2008. (Compl. at 2).[5]  Plaintiff alleges that instead of being released on February 14, 2008, he was held at the Mohawk Correctional Facility based upon a "petition" filed by an Assistant Attorney General ("AAG"). (*Id.*)  Plaintiff alleges that holding plaintiff beyond his maximum release date violated the 5th and 14th Amendment due process clauses of the United States Constitution as well as the preliminary injunction issued in *MHLS-I*.[6]  Plaintiff stresses that the injunction prohibited the AG from "enforcing" section 10.06(k), which deemed him "already 'dangerous' . . . ." (*Id.* at 3).

Plaintiff takes an overly simplified view of the *MHLS* rulings and does not consider the facts of his own case, when he argues that the AG violated the injunction as well as the constitution by using section 10.06(k).  The plaintiff relies heavily on the

---

organization to assert associational standing. *Id.*  The dismissal based upon standing does not change the court's analysis of the merits of the claims, but the permanent injunction is no longer in effect.

[5] The court will cite to the pages of the complaint as assigned by the court's electronic filing system CM/ECF.

[6] Although plaintiff also mentions the permanent injunction in *MHLS-II*, the court notes that only the preliminary injunction could have been violated because the permanent injunction was not issued until 2011.

decisions in the *MHLS* cases, and he seeks only damages for the alleged violations. Plaintiff also mentions a case, cited by the court in the *MHLS* cases, interpreting statutes authorizing pretrial detention as well as a case discussing the commitment of a defendant found not guilty by reason of insanity. (Compl. at 6) (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992); *United States v. Salerno*, 481 U.S. 739 (1987)).

Defendants have submitted to the court documents that were filed in plaintiff's MHL Article 10 proceeding, and defendants argue that the complaint should be dismissed on various bases, some unrelated to the merits of the due process claim, including the statute of limitations, the lack of personal involvement, and absolute immunity. Defendants also argue that plaintiff has failed to state a claim on the merits of this action, that he received due process, and that he is properly confined under the MHL. The following facts are taken from the defendants' exhibits of which this court takes judicial notice.

Defendants' Exhibit A is the AG's "Petition for Civil Management" filed in plaintiff's case. (Boivin Decl. Ex. A) (Dkt. No. 6-1 at 4-26). Attached as Exhibit A to the Petition, is the report of Erika Frances, Psy. D., the licensed psychologist who interviewed plaintiff. (Dkt. No. 6-1 at 13-26). Attached as Exhibit B to the Boivin Declaration is the Order to Show Cause signed by Supreme Court Justice for Oneida County (signed in Onondaga County), on February 13, 2008, scheduling the probable cause hearing for February 14, 2008, and authorizing plaintiff's continued detention pursuant to MHL § 10.06(h), pending the probable cause hearing. (Dkt. No. 6-1 at 28-29). Defendants' Exhibit C is an Order of Commitment, dated February 25, 2008,

indicating that plaintiff was waiving his probable cause hearing. The order granted plaintiff's motion to remove the action to the Bronx, where he was originally convicted. (Dkt. No. 6-1 at 31-33). Defendants' Exhibit D is a decision by the Honorable Cassandra Mullen, Supreme Court of New York County, determining that plaintiff is a dangerous sex offender requiring confinement, after a jury found that plaintiff suffered from a mental abnormality under Article 10, and after a "dispositional hearing" before the court. (Dkt. No. 6-1 at 35-37). Defendants' Exhibit E is an "Order for Continued Confinement- After Annual Review, signed by Supreme Court Justice Louis P. Gigliotti, dated January 28, 2013, together with a decision in support of that order, dated December 31, 2012. (Dkt. No. 6-1 at 39-40).

The AG's petition for civil management is dated February 11, 2008 and states that plaintiff is a detained sex offender, having been convicted of two counts of Sodomy, First Degree, upon which he was sentenced to two concurrent terms of ten years imprisonment. (Dkt. No. 6-1 at 5, 9). The petition was filed in Oneida County because at that time, plaintiff was incarcerated at Mohawk Correctional Facility ("Mohawk"), which is in Oneida County. (*Id.* at 4). In the petition, the AG reviewed plaintiff's criminal history, which included a prior conviction, after a plea of guilty to Sexual Abuse, First Degree in 1990, in satisfaction of charges of Sodomy and Sexual Abuse. (Dkt. No. 6-1 at 6). The plaintiff was sentenced to one to three years incarceration for the 1990 conviction. (*Id.*)

The petition discussed Dr. Frances's report which found that plaintiff met the diagnostic criteria for Pedophilia, Sexually Attracted to Males, Non-exclusive type.

(*Id.*)  The attached report by Dr. Frances states that the purpose of the report was to determine whether the plaintiff was a sex offender with a mental abnormality, to assess "risk management issues," and to clarify information sought by the CRT with respect to the plaintiff's "relationship with his victims, . . . insight regarding his offense cycle, and his safety plan." (*Id.* at 13).  Dr. Frances spent almost four hours with plaintiff at Mohawk.  Dr. Mark Cederbaum, another licensed Psychologist and Psychiatric Examiner was also present during the interview. (*Id.*)  The evaluation procedures were clearly set forth in the report, including a discussion of the various tests that were administered to plaintiff and the additional materials reviewed by Dr. Frances. (*Id.* at 13-14).  The list of materials reviewed was extensive. (*Id.* at 14-15).  Dr. Frances indicated at the beginning, that she "verified" plaintiff's understanding of the purpose of the evaluation and to whom it would be sent.  Plaintiff agreed to participate. (*Id.* at 15).

The court will not repeat the facts of the plaintiff's crimes except to say that they were clearly sexual in nature and involved the abuse of young children. (*Id.* at 15-16). In addition to determining that plaintiff had a mental abnormality consistent with the requirement of Article 10, Dr. Frances found that plaintiff had an inability to control his behavior. The AG's petition discussed the risk of recidivism, based upon the tests administered by Dr. Frances, and argued that plaintiff required civil commitment because of his mental abnormality and the danger that he posed to himself or others if not committed to a secure treatment facility. (*Id.* at 6-7).  The AG further stated that, given the plaintiff's history and the likelihood that he will offend again, plaintiff was

"sufficiently dangerous to require pre-trial detention, and no less restrictive alternative to Office of Mental Health Confinement will adequately protect the public pending trial." (*Id.* at 7). In addition to various requests in the petition, the AAG asked for an order authorizing plaintiff's confinement past his scheduled release date, pursuant to MHL § 10.06(h). (*Id.* at 8).

Justice Tormey signed the Order to Show Cause on February 13, 2008, directing that the Department of Correctional Services[7] produce plaintiff for a probable cause hearing before Justice Tormey on February 14, 2008 in Syracuse, New York. (Def.s' Ex. B) (Dkt. No. 6-1 at 28-29). Justice Tormey further ordered that DOCCS was authorized to confine plaintiff past his scheduled release date pursuant to MHL § 10.06(h). (*Id.* at 29). Plaintiff appeared before Justice Tormey on February 14, 2008, and on February 25, 2008, Justice Tormey issued an order removing the action to Bronx County. (Def.s' Ex. C) (Dkt. No. 6-1 at 31-33).

In Justice Tormey's February 25, 2008 order, he stated that when plaintiff appeared before the court on February 14, 2008, plaintiff was "fully advised," that he had a right to a probable cause hearing, pursuant to MHL § 10.06, including the right to present witnesses and evidence, and to cross-examine the AG's witnesses. (*Id.* at 31-32). With full knowledge of these rights, and in consultation with counsel, plaintiff waived his right to a probable cause hearing. (*Id.* at 32). In addition, plaintiff consented to commitment pending trial

---

[7] The Department of Correctional Services is now known as the Department of Corrections and Community Supervision ("DOCCS").

as though this Court had found probable cause that he
currently has a mental abnormality involving such a strong
predisposition to commit sex offenses, and such an inability to
control his behavior, that he is likely to be a danger to others
and to commit sex offenses if not confined to a secure
treatment facility pending trial . . . .

(*Id.*) Justice Tormey also stated that plaintiff "consents" to a finding that he was sufficiently dangerous to require confinement, and that lesser conditions of supervision would not suffice to protect the public during the pendency of the proceedings. (*Id.*)

On February 19, 2008, in between the February 14, 2008 appearance and Justice Tormey's February 25, 2008 Order, plaintiff filed a "Notice of Removal" to Bronx County, where plaintiff was convicted. Justice Tormey discussed plaintiff's Notice of Removal in the February 25th Order, stating that the AG had no opposition to the removal. However, Justice Tormey also made it clear that plaintiff "understands that the transfer of this matter to Bronx County will necessarily delay the trial date . . . and waives the timeliness associated with Article 10 for a trial within . . . 60 days of the probable cause hearing . . . ." (*Id.*)

Justice Tormey then ordered that the "complete file of this proceeding . . . be transferred forthwith to the County of Bronx which, upon receipt of the file, ***shall attempt to schedule the matter as timely as possible within the provisions of Mental Hygiene Law*** . . . ." (*Id.* at 33). Justice Tormey also ordered that any further appointment of counsel would be handled by the appropriate court in Bronx County, and that plaintiff's custody was to be transferred from DOCCS to OMH by February 28, 2008. (*Id.*)

Defendants' Exhibit D is a decision, written by Justice Cassandra Mullin, dated December 17, 2010, stating that plaintiff's commitment trial was held on June 22, 2010, and that the jury found that plaintiff suffered from a mental abnormality as defined by Article 10. (*Id.* at 35). Justice Mullin's December 17, 2010 decision was the result of plaintiff's dispositional hearing (a hearing conducted by the court after the jury made its findings) to determine whether plaintiff was a "dangerous" sex offender requiring confinement, and if not, whether he required strict and intense supervision ("SIST"), pursuant to MHL § 10.07(f). (Dkt. No. 6-1 at 35).

At the dispositional hearing, both the AG and the plaintiff called expert witnesses. Plaintiff called Dr. Joe Scrappo,[8] and the AG called Dr. Richard Hamill. (*Id.*) The court credited Dr. Hamill's testimony. (*Id.* at 35-37). Dr. Hamill concluded that plaintiff was not a suitable candidate for release, even under strict conditions, and that any conditions "would be inadequate to protect the community from the respondent sexually re-offending in the future." (*Id.* at 37). The court agreed and ordered plaintiff committed to a secure facility to receive further sex offender treatment. Upon completion of that treatment, the plaintiff would have the opportunity to petition the court for review and possible release. (*Id.*)

Finally, defendants have submitted the decision of Justice Louis P. Gigliotti, from the Supreme Court in Oneida County, ordering plaintiff's continued commitment after his annual review hearing, held pursuant to MHL § 10.09(a) on July 18, 2012. (*Id.*

---

[8] This doctor's name is spelled in two different ways in the record: "Scrappo" and "Scroppo." (Dkt. No. 6-1 at 35 ("Scrappo") and 43 ("Scroppo")). The court will spell the name "Scrappo" for consistency.

at 42-47).  Plaintiff had petitioned for discharged after having received his annual notice. (*Id.* at 42).  Once again, plaintiff was represented by appointed counsel from MHLS.  The separate order was dated January 28, 2013. (*Id.* at 39-40).

Dr. Scrappo submitted a written report as evidence for plaintiff, opining that plaintiff did not then have a mental abnormality and even if he did, he did not meet the criteria for continued confinement. (*Id.* at 43).  Dr. Timothy J. Wisniewski, Ph.D. submitted a report for the AG, although plaintiff declined to be interviewed by this doctor, so the doctor prepared his report based upon a review of prior records. (*Id.*) Based upon those documents, Dr. Wisniewski opined that plaintiff did suffer from a mental abnormality and did meet the criteria for continued confinement. (*Id.*)  After reviewing the evidence, Justice Gigliotti found that the AG had proven by clear and convincing evidence, that plaintiff continued to be "a dangerous sex offender." (*Id.*)

## IV. <u>Absolute Immunity/Personal Involvement</u>

### A. **Legal Standards**

It is well-settled that prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the Grand Jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Schloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

Prosecutorial immunity is extended to government attorneys who initiate civil suits or administrative proceedings. *Cornejo v. Bell*, 592 F.3d 121, 127-28 (2d Cir. 2010). An agency official who decides to institute an administrative proceeding is entitled to prosecutorial immunity because this decision is "'very much like the prosecutor's decision to initiate or move forward with a criminal prosecution.'" *Id.* at 127 (citing *Butz v. Economou*, 438 U.S. 478, 515 (1978)). *See also Contreras v. Perimenis*, No. 13-3337, 2014 WL 1409495, at *1 (2d Cir. April 14, 2014) (AAG afforded absolute immunity when sued in his capacity as a government advocate, prosecuting child welfare cases).

Notwithstanding the availability of absolute immunity, in order to recover damages in a civil rights action, plaintiff must allege a defendant's direct or personal involvement in the alleged constitutional deprivations. *Farrell v. Burke*, 449 F.3d 470, 474 (2d Cir. 2006). There are various ways to establish personal involvement articulated in *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (a supervisory official is said to have been personally involved if that official directly participated in

the infraction; if after learning of a violation through a report or appeal, he or she failed to remedy the wrong; if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue; or if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event).

### B.   Application

In this case, plaintiff is seeking damages against two AG defendants, Eric Schneiderman, who was ***not*** the Attorney General at the time of the petition, and AAG James Williams, who was ***not*** the AAG who filed the initial petition against plaintiff. Neither of these individuals was involved in plaintiff's case, and even if they had been involved, they would each be entitled to absolute immunity from damages for any action they took with respect to plaintiff's commitment proceedings. Thus, the case may be dismissed as against both remaining defendants.[9]

In plaintiff's response to the defendants' motion to dismiss, he acknowledges that defendant Williams was not the individual who filed the original petition for civil confinement against plaintiff, and that defendant Schneiderman was not the AG at the time. Plaintiff states that he has determined that the AAG who filed the petition was Tiffany M. Rutnik, and the AG in 2008, was Andrew M. Cuomo. Plaintiff claims that he will add the proper defendants "at a later date." (Dkt. No. 14 at 1). However, both of

---

[9] Plaintiff had originally named the "Office of Attorney General" in addition to the two individual defendants. The complaint was dismissed as to the "Office" defendant by order dated September 29, 2013. (Dkt. No. 3). On September 29, 2013, Chief Judge Sharpe also dismissed any claim for damages against either defendant in his "official capacity." (*Id.*)

the newly proposed defendants would still be entitled to absolute immunity for any actions they took with respect to plaintiff's commitment proceedings, and any attempt to "replace" these defendants with others who are equally immune would be futile.[10]

## V.    Due Process[11]

### A.    Legal Standards

To begin a due process analysis, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges, and then determine whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001); *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). The parties do not question that plaintiff has a liberty interest in remaining free from involuntary commitment to a mental hospital. *See Vitek v. Jones*, 445 U.S. 480, 493 (1980). The issue is whether he was afforded the appropriate procedural safeguards in conjunction with his civil commitment.

### B.    Application

The due process requirements regarding Article 10 commitment and treatment have been extensively discussed in the *MHLS* line of cases. The procedural protections

---

[10] The court will discuss below whether to give plaintiff an opportunity amend for other issues that he might raise.

[11] Plaintiff also claims that his Fifth Amendment rights were violated by defendants in this action. As defense counsel points out, the Fifth Amendment is applicable to federal actors, not state actors. *Snow v. Village of Chatham*, 84 F. Supp. 2d 322, 326 (N.D.N.Y. 2000) (citing *Brock v. North Carolina*, 344 U.S. 424, 426 (1953)). *See also Ahlers v. Nowicki*, No. 9:12-CV-539, 2014 WL 1056935, at *4 (N.D.N.Y. Mar. 18, 2014). Plaintiff in this case combines the Fifth Amendment with the Fourteenth Amendment "Due Process" claims. To the extent that plaintiff is attempting to raise the Fifth Amendment as against the state defendants, that claim must be dismissed with prejudice.

afforded by the statute have been stated in this report above, and plaintiff was afforded every procedural right associated with the MHL. The only problem, potentially relevant to plaintiff's case, with the statute thus far has been found in section 10.06(k), which allowed detention of the individual after a probable cause hearing, but before a full commitment trial, without an "individualized" finding that the individual was dangerous. In this case, plaintiff **waived** his right to a probable cause hearing when he appeared before Justice Tormey on the date scheduled for the hearing. As stated by Justice Tormey in his decision, plaintiff was specifically informed about all the rights he was waiving, he was represented by counsel, and he made a knowing and voluntary waiver of those rights, including the right to have release considered. He consented to pre-commitment trial incarceration. (Dkt. No. 6-1 at 32). Notwithstanding the plaintiff's consent, Justice Tormey also specifically found that plaintiff was dangerous, and that no conditions of release would protect the community from plaintiff's propensity toward re-offending. Thus, there was no unconstitutional application of MHL § 10.06(k) to his case.

The preliminary injunction in effect at the time of plaintiff's probable cause hearing only prohibited the application of section 10.06(k) to detain an individual **without** an individualized finding of dangerousness. Justice Tormey was specific in his finding that plaintiff was dangerous, notwithstanding plaintiff's waiver and consent to remain incarcerated. There was no violation of either the *MHLS-I* preliminary injunction or procedural due process, protected by the Fourteenth Amendment. Thus, any due process or statutory claims raised in the complaint may be dismissed.

## VI.    Opportunity to Amend

### A.    Legal Standards

In addition to the requirement that pro se complaints must be "liberally construed," the court should generally not dismiss without granting leave to amend at least once. *Contreras v. Perimenis*, No. 13-3337, 2014 WL 1409495, at *1 (citing *Cuoco v. Moritsugu*, 222 F.3 99, 112 (2d Cir. 2000)).  The court may deny leave to amend when the amendment would be futile. *Id.* (citing *Pangburn v. Culbertson*, 200 F.3d 65, 70-71 (2d Cir. 1999)).

### B.    Application

Plaintiff has responded to the defendants' motion to dismiss, and has repeated many of the arguments that the court has already discussed above. (*See generally* Dkt. No. 14).  Plaintiff may not "replace" the existing AG defendants with new AG defendants because the "new" defendants would be entitled to raise the same absolute immunity defense as the existing AG defendants.  Any such amendment would be futile, and the court may deny the opportunity to amend to replace AG defendants.

Plaintiff also adds new factual allegations in his response to defendants' motion to dismiss.  The court notes that generally, a plaintiff may not "amend" his complaint in response to a motion to dismiss. *Chamberlain v. City of White Plains*, No. 12-CV-5142, 2013 WL 6477334, at *25 n.19 (S.D.N.Y. Dec. 10, 2013) (citing *Wright v. Ernst & Young, LLP*, 152 F.3d 169, 178 (2d Cir. 1998)).  Thus, to the extent that plaintiff raises new factual issues in his response, the court will not consider them as part of the original complaint.  However, because plaintiff is pro se, and the court must interpret

his pleadings to raise the strongest arguments they suggest,[12] the court will consider these new factual issues in determining whether to allow plaintiff an opportunity to amend his complaint.

In his response to defendants' motion to dismiss, plaintiff now states that because he was incarcerated in Oneida County, and Justice Tormey signed the Order to Show Cause and the order transferring plaintiff's case to the Bronx, in Onondaga County, there is some sort of "jurisdictional issue." (Dkt. No. 14 at 6). Plaintiff does not state what that "issue" might be, and the court points out that *plaintiff* made a motion to remove his case pursuant to the MHL to Bronx County, where he was convicted.[13] In any event, it is unclear who plaintiff would name as a defendant other than Justice Tormey, who signed the order. Justice Tormey would be absolutely immune from any suit for damages that plaintiff could bring with respect to the transfer of his case to Bronx County. *See Mireless v. Waco*, 502 U.S. 9, 9-10 (1991) (with minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions). Thus, the court should not allow an amendment to claim any due process or other violation with respect to Justice Tormey's transfer of plaintiff's case to Bronx County.

Finally, plaintiff alleges that he never "sign[ed]" a waiver of his right to a timely

---

[12] *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994) (a court is to read a pro se party's "supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest")).

[13] Plaintiff answers this by stating that he agreed to have his case transferred from "Oneida" County to Bronx County, not from "Onondaga" County to Bronx County. (Dkt. No. 14 at 7). It is unnecessary to address this frivolous argument.

probable cause hearing or a timely trial within sixty days of the probable cause hearing. The only reference to "written consent" in section 10.06(k) refers to a situation where an inmate "who otherwise would be required to be transferred to a secure treatment facility [after a finding of probable cause], may, . . . upon a written consent signed by the respondent and his or her counsel, consent to remain in the custody of the department of corrections and community supervision pending the outcome of the proceedings under this article . . . ." This situation would arise if the plaintiff wished to stay in DOCCS custody, rather than be transferred to CNYPC or other treatment facility. This section does not require written consent to waive a timely hearing.

As stated above, Justice Tormey found specifically, that plaintiff did waive his right to not only a "timely" probable cause hearing, but to "any" probable cause hearing. Justice Tormey's finding that he informed the plaintiff of the rights that he was waiving, and that plaintiff agreed to the waiver with the advice of counsel, is sufficient. The law is clear that an individual may waive both statutory and constitutional rights as long as the waiver is knowing, voluntary, and intelligent. *Murray v. Town of North Hempstead*, 853 F. Supp. 2d 247, 259-60 (E.D.N.Y. 2012) (citations omitted). Justice Tormey made that finding in his decision, and no amendment to the complaint could state a viable due process claim.

Once again, there is no defendant that plaintiff could add, who would not be able to claim absolute immunity. Justice Tormey accepted plaintiff's waiver, and as stated above, he would be entitled to absolute immunity regarding any action taken on a case before him.

During the colloquy regarding plaintiff's waiver of the right to a probable cause hearing and consent to be incarcerated pending the commitment trial, Justice Tormey made it clear that any transfer of plaintiff's case to Bronx County would involve a trial delay past sixty days after the probable cause hearing as required by the MHL. (Dkt. No. 6-1 at 32). Justice Tormey stated that plaintiff also waived the "timeliness associated with Article 10 for a trial within . . . 60 days of the probable cause hearing." (*Id.*)

In *Roache v. Attorney General's Office*, No. 9:12-CV-1034, 2013 WL 5503151, at *13-15 (N.D.N.Y. Sept. 30, 2013),[14] Magistrate Judge Peebles recommended that the court dismiss a very similar action for damages as against the AG defendants in both their official and their individual capacities, based on absolute immunity, lack of personal involvement, and Eleventh Amendment immunity. However, Magistrate Judge Peebles liberally construed plaintiff's claims in *Roache* to give rise to a due process claim, for the delay in the probable cause hearing and trial. *Id.* at *15. Judge Peebles recommended dismissing the action, but affording "plaintiff an opportunity to amend his complaint to name a defendant that may be properly sued for this alleged violation, ***if such an individual exists***." *Id.* at *15 (emphasis added).

One of the reasons that Magistrate Judge Peebles allowed plaintiff the opportunity to amend was because in Justice Tormey's[15] order in *Roache*, he only stated

---

[14] District Court Judge Lawrence Kahn adopted Judge Peebles's Report-Recommendation in its entirety. 2013 WL 5503151, at *1-3.

[15] Justice Tormey also signed the removal order in *Roache*.

that plaintiff was "waiving the application of the time frames for [the probable cause hearing] and subsequent trial, as set forth in [MHL] § 10.06 and 10.07 . . . ." *Id.* at *9. Magistrate Judge Peebles stated that neither the defendants' memorandum of law, nor Justice Tormey's removal order provided supporting evidence that plaintiff "voluntarily and knowingly consented to the waiver." *Id.*

In this case, the facts are different than in *Roache*, even assuming plaintiff had raised this issue in his complaint as did plaintiff in *Roache*. There is no issue regarding the probable cause hearing because plaintiff **specifically** waived it, rather than the court presuming waiver because of the motion for removal. The plaintiff in *Roache* filed the removal motion before the probable cause hearing was held. Roache did not consent to a probable cause **finding** or a dangerousness **finding**. *Id.* Magistrate Judge Peebles found that it would be premature to dismiss plaintiff's due process claim arising from the allegation that he was not timely afforded the probable cause hearing and trial in this matter. *Id.*

In this case, Justice Tormey did find that plaintiff's waiver of the probable cause finding itself was knowing, voluntary, and in consultation with counsel. (Dkt. No. 6-1 at 32). Justice Tormey also clearly explained that plaintiff was consenting to commitment "as though [the] Court had found probable cause that he currently has a mental abnormality . . . and such an inability to control his behavior, that he is likely to be a danger to others . . . if not confined to a secure treatment facility pending trial." *Id.* Justice Tormey specifically stated in addition to consenting to a finding that he was dangerous, he consented to a finding that "lesser conditions of supervision will not

23

suffice to protect the public during the pendency of these proceedings . . . ." *Id.* Justice

Tormey noted that the AG had no opposition to removal "upon [plaintiff's] consent to a

finding of probable cause . . ." and sufficient dangerousness to require pre-trial

detention. *Id.* Thus, there is no possible amendment to this complaint that would revive

any issue with respect to plaintiff's probable cause determination.

It is true that the trial was not held for approximately two and one half years after

the plaintiff waived the probable cause hearing before Justice Tormey. However,

Justice Tormey clearly ordered the Clerk of the Court to transfer the complete file to the

Bronx County Clerk's Office "forthwith," and "without any <u>unnecessary delay</u>," to

Bronx County "which, upon receipt of the file, shall attempt to schedule the matter as

timely as possible within the provisions of the [MHL] . . . ." (Dkt. No. 6-1 at 33)

(underlining in original). The important issue, plaintiff's dangerousness and consent to

incarceration pending trial was resolved by plaintiff's waiver, thus any further delay did

not rise to the level of a constitutional violation.

In addition, it appears that any delay in scheduling plaintiff's trial was

attributable to the court in Bronx County. There is no amendment that plaintiff could

propose at this time that would allow this action to proceed against any defendants,

particularly anyone associated with the court in Bronx County. First, Bronx County is

not in the Northern District of New York. Second, any action against the Court or its

personnel would likely be barred by absolute immunity, and third, as discussed below,

any attempt to add ***new*** claims and defendants at this time would be barred by the

statute of limitations.

## VII. <u>Statute of Limitations</u>

### A. **Legal Standards**

Federal courts borrow the state law personal injury statute of limitations period for purposes of filing section 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In New York State, the relevant limitations period is three years. *Owens v. Okure*, 488 U.S. 235, 250–51 (1989). *See* N.Y. Civ. Prac. L & R. § 214(5). Thus, unless the limitations period is tolled for some reason, a plaintiff must file his section 1983 civil rights action within three years of the accrual of each cause of action. Federal law, governs the question of when a section 1983 claim accrues. *Covington v. City of New York*, 171 F.3d 117, 121 (2d. Cir. 1999) (citing *Morse v. University of Vermont*, 973 F.2d 122, 125 (2d. Cir. 1992)). Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotation marks omitted)). Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled. *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 1997).

### B. **Application**

In this case, even if the court were to find that there was a named defendant that plaintiff could add, his claims would likely be barred by the statute of limitations. Even assuming that plaintiff was unaware of any cause of action until he had his commitment trial on June 22, 2010, plaintiff's complaint in this action was signed on September 10,

2013,[16] several months after the statute of limitations would have run.[17]  Thus, the original complaint was untimely.  Plaintiff can not amend an already untimely complaint to assert his claim against new defendants.  Even if plaintiff's original complaint had been timely, the statute of limitations would certainly have run by now. In order to amend the complaint after the statute of limitations has run, the amendment must "relate back" to the date of the original complaint.  Federal Rule of Civil Procedure 15(c) states that if the amendment changes the parties, it will only relate back if the amendment asserts a claim that arose out of the conduct, transaction or occurrence set forth in the original pleading, the parties received notice of the action so they would not be prejudiced by the amendment and they knew or should have known that the action would have been brought against them, but for a mistake concerning the proper party's identity. Fed. R. Civ. P. 15(c)(1)(C)(i), (ii).  In this case, there is no way that plaintiff can amend his complaint to assert a timely claim against new defendants that would never have been aware of such a claim against them.  Thus, this complaint may be dismissed with prejudice.

---

[16] The complaint was not filed with the court until September 12, 2013, but the court is giving plaintiff every benefit of the "mailbox" rule in this case.

[17] There is no indication that there would be any cause for equitable tolling, particularly because plaintiff was represented by counsel during the pendency of the proceedings under the MHL.  The doctrine of equitable tolling allows the court to extend the statute of limitations past the time of expiration as necessary to avoid inequitable circumstances. *Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996) (citation omitted).  In order to apply equitable tolling, the court must find that "extraordinary circumstances" prevented the plaintiff from performing the required act, and that plaintiff acted "with reasonable diligence" during the period that he seeks to toll. *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (quoting *Doe v. Menefee*, 391 F.3d 159 (2d Cir. 2004)).  There are no extraordinary circumstances in this case.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the defendants' motion to dismiss (Dkt. No. 6) be

**GRANTED**, and the complaint dismissed in its entirety **WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: April 29, 2014

Hon. Andrew T. Baxter
U.S. Magistrate Judge